Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Attorneys for Plaintiffs and the Putative Class*

[Additional counsel appear on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| SARA RAYMOND and MICHELLE O'BRIEN individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| KIA AMERICA, INC., | |
| Defendant. | |

CLASS ACTION COMPLAINT

Plaintiffs Sara Raymond and Michelle O'Brien ("Plaintiffs"), by and through their undersigned counsel, bring this action individually and on behalf of all others similarly situated against Defendant Kia America, Inc. ("Defendant" or "Kia"), and allege as follows:

## NATURE OF THE ACTION

1.   Plaintiffs bring this action individually and on behalf of a class of similarly situated purchasers and lessees of Kia's model year 2020-2024 Telluride vehicles ("Vehicles" or "Class Vehicles").

2.   As alleged herein, the Class Vehicles are defective and unsafe. They contain a dangerous and potentially life-threatening defect that results in their brakes malfunctioning, becoming intermittently non-operational, and failing altogether (the "Defect"). This poses a significant and obvious safety hazard to drivers and occupants of Class Vehicles, and puts the lives of Vehicle drivers and occupants, and other drivers on the road at risk. Braking failures create the risk of rear end collisions and crashes and prevent a driver from stopping on command. As discussed below, numerous consumers have experienced the Defect while operating a Class Vehicle.

3.   The Defect manifests when the hydraulic pressure fails on the brake pedals, causing the pedal to fall to the floor and become "spongy." When this occurs, drivers attempting to engage the brakes (i.e., press the brake pedal) cannot do so reliably or effectively.

4.   Kia is aware of and has identified the root cause of the Defect, including through internal documents and reports addressing the brake failure in the Class Vehicles. On information and belief, the Defect results from a compromise in the Vehicle's braking system, namely in the master cylinder, that reduces brake fluid pressure. This results in "spongy" brakes that have no pressure and which cannot be engaged, fall to the floor, and do not work.

CLASS ACTION COMPLAINT

5.     Despite the serious issues posed by the Defect, Kia has omitted this material information from consumers and has not issued a recall or reliable fix. Class Members are thus left in the lurch, driving vehicles with brakes that could unexpectedly fail at any moment.

6.     Plaintiffs bring this action to obtain redress for themselves and those who have purchased or leased Vehicles across the United States. Plaintiffs seek relief for Kia's breaches of implied warranties, fraud, unjust enrichment, and violations of consumer protection law. They also seek declaratory and injunctive relief to prevent Kia's continued misconduct, and to require it to issue an appropriate fix.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the claims relating to the matter in controversy exceed $5 million, the proposed classes have at least 100 members, and this is a class action in which certain of the class members (including Plaintiffs) and Kia are citizens of different states.

8.     Venue is proper in this judicial District under 28 U.S.C. § 1391 because Kia is headquartered in this judicial District, Kia conducts significant business throughout this District, and a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in, or emanated from, this District.

9.     At all pertinent times, Kia was engaged in the marketing, advertisement, sale, and lease of the Class Vehicles, which are the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

**Plaintiff Sara Raymond**

10.     Plaintiff Raymond is an adult who resides in and is a citizen of Spring, Texas. In or about mid-2023, Plaintiff purchased a new 2023 Telluride from Demontrond Kia, an authorized Kia dealership located in Houston, Texas. Plaintiff uses her Class Vehicle for family and household purposes.

- 2 -
CLASS ACTION COMPLAINT

11.    On or around November 7, 2024, the brakes on Plaintiff's Vehicle failed. Specifically, the brakes suddenly and without warning had no pressure. The vehicle crested a hill, picked up speed, and could not slow down. This ultimately resulted in a collision with another car.

12.    In the aftermath, Plaintiff's car has been at the Kia dealership and Kia body shop for approximately six weeks. Despite communicating her need for a loaner vehicle from Kia, the dealership has not provided Plaintiff with a loaner vehicle. This has resulted in Plaintiff Raymond paying for a rental vehicle on a weekly basis due to Kia's inability to provide a timeline for repairs on her vehicle.

13.    Because of the Defect, and Kia's inability or refusal to permanently remedy the issue, Plaintiff continues to be exposed to a—and is very concerned about an ongoing—serious safety risk associated with brake failure in the Class Vehicle.

14.    At the time of purchasing the Vehicle, Plaintiff did not know that the Vehicle contains an unsafe Defect that causes brake failure and can result in a crash, and that Plaintiff would not be able to safely drive the Vehicle without risk of the brakes failing. Had Kia disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to purchasing the Class Vehicle, Plaintiff would not have purchased the Vehicle, or would not have paid the purchase price that Plaintiff did. Plaintiff relied upon Kia that it was providing the full picture of information regarding the Vehicle and relied upon the idea that Kia would not withhold material information about safety defects in the Vehicle, including the Defect. As a result, Plaintiff received less than what was paid for the Vehicle and did not receive the benefit of Plaintiff's bargain.

15.    In addition, Plaintiff sustained actual damages as a result of the Defect, namely in out of pocket expenses brought about by November 7 incident caused by the Defect. Plaintiff promptly had her vehicle towed to the Demontrond Kia dealership, and then was told that the vehicle actually needed to be towed the

Demontrond Kia body shop, resulting in two tows costing the Plaintiff approximately $400. Plaintiff Raymond also has incurred approximately $2,000 in rental vehicle fees and payments because Kia did not provide Plaintiff with a rental vehicle. Plaintiff anticipates incurring more rental vehicle fees while Kia inspects her vehicle.

**Plaintiff Michelle O'Brien**

16.    Plaintiff O'Brien is a resident of Olathe, Kansas. On October 25, 2024, Plaintiff purchased a 2024 Telluride from Arapahoe Kia, an authorized Kia dealership located in Denver, Colorado. Prior to purchasing the Vehicle, Plaintiff spoke to three Kia dealerships near Olathe, Kansas, but none of them were able to obtain the Vehicle in the exterior/interior color combination she preferred. Plaintiff ultimately went to Denver to retrieve the vehicle from Arapahoe Kia, which had her preferred color combination available. Plaintiff uses the Class Vehicle for family and household purposes.

17.    Plaintiff drove her Telluride for only approximately three weeks (with 750 miles on it) when the brakes first failed. This happened while she was driving on a Meals on Wheels route. She tried to stop at her last stop when the brakes fell to the floor due to loss of pressure. Only when she pushed down on the brakes with full force did she feel minor resistance and came to a complete stop. Plaintiff was driving through a large intersection at the time the brakes failed, but fortunately was able to stop the car without incident.

18.    Plaintiff had her car towed to Robert Brogden Kia in Olathe, Kansas. The dealership claimed to have fixed the issue, so it would not provide her with a loaner vehicle. However, the dealership was not able to adequately describe how they fixed the issue, and so Plaintiff is reluctant to drive the Vehicle. Her Vehicle is currently still at the dealership, as she does not feel safe driving it. Plaintiff reached out to Kia Consumer Affairs, who advised her not to pick up the Vehicle.

CLASS ACTION COMPLAINT

19.    Because of the Defect, and Kia's inability or refusal to permanently remedy the issue, Plaintiff continues to be exposed to a—and is very concerned about an ongoing—serious safety risk associated with brake failure in the Class Vehicle.

20.    At the time of purchasing the Vehicle, Plaintiff did not know that the Vehicle contains an unsafe Defect that causes brake failure and can result in a crash, and that Plaintiff would not be able to safely drive the Vehicle without risk of the brakes failing. Had Kia disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to purchasing the Class Vehicle, Plaintiff would not have purchased the Vehicle, or would not have paid the purchase price that Plaintiff did. Plaintiff relied upon Kia that it was providing the full picture of information regarding the Vehicle and relied upon the idea that Kia would not withhold material information about safety defects in the Vehicle, including the Defect. As a result, Plaintiff received less than what was paid for the Vehicle and did not receive the benefit of Plaintiff's bargain.

**Defendant Kia America, Inc.**

21.    Defendant Kia America, Inc. is a California corporation organized, in existence, and registered to do business in California under California law, with its corporate headquarters located at 111 Peters Canyon Road, Irvine, California, 92606.

22.    Kia markets, sells, and leases the Class Vehicles throughout the United States, including in this District. Kia is responsible for sales, marketing, service, distribution, import, and export of Kia-branded products, including vehicles and parts, in California, and in the United States. Kia is also the warrantor and distributor of Kia vehicles, including the Vehicles, in California and throughout the United States.

23.    Kia has thousands of authorized dealerships across the United States— which are its agents—and controls the distribution of automobiles, parts, services,

CLASS ACTION COMPLAINT

and warranty repairs Kia vehicles throughout the United States, all of which are under Kia's control. Kia authorizes these distributors and dealerships to sell Kia vehicles, parts, and accessories and to service and repair Kia vehicles using Kia parts. Kia exerts control over its dealership-agents through the technical service bulletins and other repair guidance it issues to its dealerships relating to problems arising with Kia vehicles, including the Defect in the Vehicles, and instructing dealerships how to perform repairs; Kia's warranty directs Vehicle owners and lessees to present their Vehicles to Authorized Kia Dealers for repairs and service; and Kia requires authorized dealerships to submit detailed data to it regarding repairs performed at dealerships.

24.    Kia does substantial business in California, with a significant portion of the sales and leases made in California. In fact, most of its work in sales, marketing, distribution, import, export, and warranty of Kia-branded products, including vehicles and parts, takes place in California.

25.    California hosts a significant portion of Kia's U.S. operations, including sales and service offices and financial service offices, among others. Kia's research and design facilities are in California.

26.    In addition, the conduct that forms the basis for each and every class member's claims against Defendant emanated from Kia's headquarters in California and is consistent with directives of Defendant's personnel in California.

## **SUBSTANTIVE ALLEGATIONS**

27.    This action is brought against Kia on behalf of Plaintiffs and all persons who purchased or leased Kia's model year 2020-2024 Telluride vehicles. The models and model years of vehicles comprising the Class Vehicles are subject to revision based upon information learned through the discovery process.

28.    Kia America, Inc. is the marketing and distribution arm of Kia Motors Corporation based in Seoul, Korea. Headquartered in Irvine, California, Kia touts itself as having "been the highest ranked mass market brand in initial quality for five

consecutive years according to J.D. Power, and is recognized as one of the 100 Best Global Brands by Interbrand."[1] Kia "offers a complete range of vehicles sold through a network of nearly 800 dealers in the U.S."[2]

29.    In a press release published on Kia's website, www.kiamedia.com, Kia quotes its president Michael Cole as stating, "Kia is committed to building the safest vehicles possible" and that the six Top Safety Pick (TSP) ratings Kia recently received from the Insurance Institute for Highway Safety (IHS) reflect Kia's "commitment and reaffirms Kia's continued effort to strive for safety improvement and advancement in every model" it produces.[3]

30.    Kia sells Class Vehicles to its authorized distributors and dealerships, which, in turn, sell or lease those vehicles to consumers. After these dealerships sell cars to consumers, including Plaintiffs and members of the classes, they purchase additional inventory from Kia to replace the Vehicles sold and leased, increasing Kia's revenues. Thus, Plaintiffs' and class members' purchases of Vehicles accrue to the benefit of Kia by increasing its revenues.

### Overview of the Kia Telluride

31.    The Kia Telluride is a three-row SUV that was initially introduced in 2019 as a 2020 model (first generation). Upon release, Kia announced "Today the all-new 2020 Kia Telluride made its official on-road and off-road debut, beginning a new adventure for Kia with its biggest and boldest SUV ever. . . . Imagined in America, designed at Kia's design studio in California, and assembled in Georgia, the Telluride is the largest Kia ever. It provides comfortable seating for up to eight, a powerful 291-hp 3.8-liter V6, available active on-demand all-wheel drive, and an

---

[1] KIA MEDIA, *Kia receives Six Top Safety Pick Ratings From Insurance Institute for Highway Safety* (Feb. 17, 2020), https://www.kiamedia.com/us/en/media/pressreleases/16009/kia-receives-six-top-safety-pick-ratings-from-insurance-institute-for-highway-safety.

[2] *Id.*

[3] *Id.*

CLASS ACTION COMPLAINT

inspiring view of the world. The Telluride offers potential for exploration and adventure every time it's on the road."[4]

32.    In 2024, U.S. News & World Report named the Telluride in its "Best Cars for Families" award for the fifth year in a row.[5] Kia touts that the award honors cars that "offer the best combination of safety, reliability, space, convenience, and connectivity."[6] It also describes the Telluride, which it designed for the U.S. market, as a "a head-turning proposition from the start."[7]

33.    In the press release, Kia quotes its Chief Operating Officer and Executive Vice President of Kia America, Steven Center, as stating, "The Telluride's recognition as U.S. News & World Report's best 3-row midsize SUV for families highlights the industry-leading quality of Kia's technology, convenience and safety features, . . . Kia is honored to be named among the 2024 Best Cars for Families." [8]

### Braking Systems In Automobiles

34.    There are two types of brakes in use in cars today: disc brakes and drum brakes.[9] Class Vehicles are equipped with disc brakes. Disc brakes feature brake pads that press against a rotor when the brake pedal is applied.[10]

---

[4] KIA MEDIA, *2020 Telluride Overview* (Mar. 19, 2019), https://www.kiamedia.com/us/en/models/telluride/2020.

[5] KIA MEDIA, *Kia Telluride Wins a 2024 Best Cars for Families Award from U.S. News & World Report* (Mar. 20, 2024) https://www.kiamedia.com/us/en/media/pressreleases/21947/kia-telluride-wins-a-2024-best-cars-for-families-award-from-us-news-and-world-report.

[6] *Id.*

[7] KIA MEDIA, *Kia Telluride Named 'Best Family Car of 2024' by Cars.com* (Feb. 7, 2024) https://www.kiamedia.com/us/en/media/pressreleases/21823/kia-telluride-named-best-family-car-of-2024-by-carscom.

[8] *Kia Telluride Wins a 2024 Best Cars for Families Award from U.S. News & World Report, supra.*

[9] *How the Brake System Works*, WAGNER BRAKE, https://www.wagnerbrake.com/technical/parts-matter/driver-education-and-vehicle-safety/how-the-brake-system-works.html (last visited Dec. 16, 2024).

[10] *Id.*

35.    More specifically, when a brake pedal is depressed by the vehicle operator, the pressure first flows to the brake booster, which then applies amplified force by way of a pushrod to the master cylinder, which is located in the engine compartment of a vehicle.[11]

36.    As illustrated below, the master cylinder then directs fluid to each of the four wheels through metal tubes and braided hoses.[12] The fluid travels to the slave cylinders at each wheel and fills them, forcing the pistons out to apply the brakes.[13]



37.    A disc brake has a disk that turns the wheel, and the disc is straddled by a caliper, in which there are slave pistons that are operated by way of pressure from

_____

[11] *How the Brake System Works, supra*; *Get to Know the Essential Parts of Your Braking System*, Firestone Complete Auto Care, (June 1, 2022),
https://www.firestonecompleteautocare.com/blog/brakes/parts-of-the-braking-system/.

[12] *How the Brake System Works, supra*.

[13] *How the Braking System Works*, How A Car Works,
https://www.howacarworks.com/basics/how-the-braking-system-works (last visited Dec. 16, 2024).

the master cylinder.[14] The pistons press on friction pads that clamp against the disc from each side to slow or stop the vehicle, as illustrated below:



### *The Defective Brakes and Braking Systems in the Telluride*

38.     The Class Vehicles are equipped with defective brakes or braking systems.

39.     Plaintiffs' investigation is ongoing, and the root cause of the Defect will be honed and pin-pointed through discovery in this litigation, but Plaintiffs' investigation to date suggests, and they thus allege, that the Defect originates in the master cylinder within the braking system, and may be involve air, impediments, or a blockage in the brake lines, or otherwise an issue with hydraulic fluid transmission.

40.     Brake failure in automobiles is unacceptable. It presents a severe safety issue that can cause collisions leading to serious injury or death. Clearly, the Defect presents a safety concern, and though numerous consumers have complained about it and brought their Vehicles to Kia to address the Defect, Kia has failed to adequately address the Defect, including failing to issue a recall.

---

[14] *Id.*

CLASS ACTION COMPLAINT

41.    The internet is replete with complaints from Class Vehicle owners and lessees who, like Plaintiffs, have experienced the unsafe Defect and resultant malfunctioning or failing brakes. Kia did not repair or otherwise correct the Defect in the Vehicles to permit Plaintiffs or class members to safely continue driving their Vehicles without risk of their brakes failing.

42.    Numerous online message board discussions and complaints highlight the dangers posed by the Defect. A sampling of these are below:

(Complaints from Kia Telluride Forum)[15]



---

[15], *Brakes Failing*, Kia Telluride Technical Forums (various users), https://www.kiatelluride.org/threads/brakes-failing.1653/ (last visited Dec. 17, 2024).

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**S**

**SP123**
New Member

Messages:       1
Likes:           0
Location:
        Avon Lake, OH, USA

Sep 23, 2021                                                    #7

I had a similar incident with my 4-month old 2021 Telluride AWD w/ ~3,400 miles. While pulling the Telluride AWD into the garage, the brake pedal suddenly and without warning lost pressure, went limp and dropped to the floorboard. We could not stop the vehicle and crashed into the interior of the garage. The Telluride stopped after ramming into the foundation of the house at which point we could put it in park and brake functionality returned. It was a very frightening experience resulting in damage to the Telluride AWD, my home and personal property. My home surveillance captured the moment and the video is posted on YouTube:



Attachments



Unknown-1.jpeg
1.9 MB                        Views: 19

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

May 3, 2022                                                                                        #9

**red**
New Member
Messages:                    3
Likes:                           0
Location:
     Fort Worth, TX, USA

My wife recently experienced this extremely dangerous brake problem in our 2020 Telluride.

She was coming to a stop light and was able to slow to about 3-5 mph and when trying to come to a complete stop—well before she got near the other vehicle (which was a semi truck)—her brake was a wet noodle with no response. She was far enough away from the semi where she had enough time to try throwing it in neutral, reverse, and park while moving (because she was pumping the brake all the way up and down) and nothing happened. She eventually hit the semi's trailer. Three of my kids (16/15/8) were in the car and they witnessed the whole thing. Thankfully no one was injured. I immediately took her my truck and I slow crawled to Moritz Kia of Alliance Texas. I explained the issue and tried to share this thread with them and they had no interest in looking at it. They have had it for roughly 3 weeks and say it has no issues and is ready for pickup. I told them I have no interest in picking it up until this issue is fixed, given it's a life/death problem. I'd be a fool to put my wife and kids back in that vehicle!

Anyway, can one of you please tell me:

1. What your local dealer did to fix your brake problem?
2. Which specific Kia dealership fixed your issue so I can reach out to them?

Also if any of you have other ideas, I'd appreciate it. Thanks guys.

- 13 -

CLASS ACTION COMPLAINT



**flenzy**
New Member

| | |
|---|---|
| Messages: | 5 |
| Likes: | 1 |
| Location: | |
| | Newberg, Oregon |

Apr 28, 2023                                          #13

> **red said:** ⊙
>
> I did everything I could to prove/convince them this happened and they said they tested everything, drove it many times, and even consulted with Kia HQ engineers about it. They maintained that everything was fine. So I told them I'm not picking it up until I was done arguing with Kia HQ about it. My HQ rep was very hard to get a hold of and they were useless and pretty much just told me to pursue Texas' lemon laws. After about 2-3 months of this ordeal (with my Telluride still in the back of their lot because I wouldn't pick it up), I filled out a form on their site to see what their online sales dept would offer me for it.
>
> ~~There's no way I was putting my kids in the SUV and there's no way I could sell~~
>
> <span style="color:red">Click to expand...</span>

Lordy, lordy. Believe it or not, it sounds as if you had better customer care than I did here in Oregon (at Ron Tonkin Kia of Ron Tonkin Auto Group.) Had this exact problem and got the absolutely rudest and dismissive 'service' there multiple times, trying to gaslight me (an older female) about there being no problem at all - 'it's normal', 'it's the way you must drive', etc. My Kia went from being this amazing car I'd had for a year and a half to a car I didn't trust at all. I fully suspect they are trying to avoid any possibility of a class action lawsuit and have to do a recall, therefore acting as if nothing is wrong at all. I am astounded at Kia's behavior regarding this, as my car has slid into a worktruck, had to hit a curb to stop it, and slid through two stop signs. I am so tempted to get legal advice regarding this issue. I've never in my life been treated like this by any company and I find it surprising. I would never buy a Kia again based on their treatment over the past few weeks. I just know that they know they've got a problem here with the Telluride. I've talked to groups of friends and anyone admiring the car and say "it's great, until it's not, and then good luck." I'm so sorry you and your wife had to deal with this. I'd never advise a woman to get this car nor deal with this dealership. They had absolutely zero concern for my safety nor that of my passengers. Does Kia seriously not read their own owners' forum nor care?

**K**

**Kalamity**
New Member

| | |
|---|---|
| Messages: | 1 |
| Likes: | 0 |
| Location: | 48036 |

Sep 21, 2023                                          #14

2022 S, tried to park the other day and the brake pedal sunk to the floor. Took about 10 seconds before it "woke up" again and I could stop. Dealer I took it to today treated me like an absolute idiot, telling me it is wear and tear on the vehicle, etc. considering selling it back after that experience today. They can't replicate the problem so nothing is wrong, apparently. Not sure what to do at this point besides sell it back, I don't feel like risking that happening on the highway.

CLASS ACTION COMPLAINT



**flenzy**
New Member

| | |
|---|---|
| Messages: | 5 |
| Likes: | 1 |
| Location: | |
| | Newberg, Oregon |

Sep 22, 2023                                                        #15

I am positive that Kia is aware of this problem and is trying to gaslight owners into thinking they are imagining such a dangerous situation. They always said to me that they couldn't replicate the problem (which was frequent, although intermittent.) The Kia dealership I dealt with was horrid and finally they replaced a light (?) It was something that was recalled and I can't think of what it was. After they did that, the Telluride suddenly was driving perfectly and had its power back and the brakes have been fine since. Kia is fully aware of this and I'll bet don't want a class action lawsuit or similiar.



**Kcam311**
New Member

| | |
|---|---|
| Messages: | 1 |
| Likes: | 0 |
| Location: | 11741 |

Jan 14, 2024                                                        #16

I just had the same issue this week. I had my infant in the car with me too. I was driving the streets in my neighborhood and after several minutes of driving without incidents all the sudden my brakes wouldn't work. I couldn't stop as I approached a stop sign and rolled right through an intersection. I couldn't stop Till I was well on the other side of the intersection. Thank God no one was coming through the cross streets at the time or I would've been nailed with my infant in the car. I'm having the exact same horrible experience with the dealership. They are telling me now that there are no lights on my dashboard anymore and they drove my car and it is absolutely fine. they're crazy. Trying to get me to come and pick the car back up with how dangerous this is. I read that so many people here weren't accidents because of it. Thank God we were OK. They literally tried to get me to pick the vehicle up when they didn't even inspect the brakes or run any codes. And I don't know how, but all of the dashboard lights that came on right after it happened or miraculously off. Good thing I took a photo of them. This is really scary but this is happening repeatedly and there is no recall. It's unbelievable that the dealership is pretending that we are crazy and trying to get us to take really dangerous vehicles back. I seriously don't know what to do.



**Texmexkent**
New Member

| | |
|---|---|
| Messages: | 1 |
| Likes: | 0 |
| Location: | Louisville |

Oct 2, 2024                                                        #23

Our 2022 Telluride AWD brakes will drop out n reset while trying to stop. Took it to KIA in Louisville to look it over. Telluride has been there for 7 weeks now n still no answer. Was told the transportation board took over the inspection of the vehicle. Have a case number from KIA manufacturer in Irving, California. As for now nobody can drive it till it's released.
KIA's not calling it a recall yet. Giving it two more weeks then Lawyering up. Nobody has no clue what causes this issue. Anyone have their Telluride pay back yet from the manufacture?


Sent from my iPhone using Tapatalk

- 15 -
CLASS ACTION COMPLAINT

(From Telluride Forum)[16]



(From Reddit)[17]



### 2023 EX Telluride - "Brake Feel"

Greetings to all.

I have a '23 Telluride we picked up on 1/3/23 with 2,061 miles on it now. When applying the brakes I feel the urge to "pump them up" as I'm coming to a stop. Maybe you've driven an OLD car/truck and remember the sensation?

I have no indications of an issue from the vehicle sensors, just the sensation the pedal continues to move as I press it. Once stopped, there is no more movement. I intend to mention it at my first service.

Has anyone else with a similar sensation? Any known/possible issues experienced?



---

[16] Telluride Forums, *New Owner Having a Problem with Brakes*, (various users) https://tellurideforum.org/threads/new-owner-having-a-problem-with-brakes.15144/ (last visited Dec. 17, 2024).

[17] u/VariousDistance, *2023 EX Telluride – "Brake Feel."* REDDIT, https://www.reddit.com/r/KiaTelluride/comments/11a3kxn/2023_ex_telluride_brake_feel/ (last visited Dec. 17, 2024).

CLASS ACTION COMPLAINT

43.     The following are some examples of complaints from owners and lessees of the Vehicles concerning the Defect available through NHTSA's website[18]:

**February 5, 2024** NHTSA ID NUMBER: 11570087

## Components: SERVICE BRAKES, FORWARD COLLISION AVOIDANCE

**NHTSA ID Number:** 11570087

**Incident Date** December 1, 2023

**Consumer Location** CINCINNATI, OH

**Vehicle Identification Number** 5XYP5DHCXMG****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | Yes | There were 2 lanes going in the same direction and I was on the right. The road was turning to the right and ended up hitting a car in the lane on the right. Road conditions were wet but no puddling. I depressed the brake pedal to reduce my speed for the turn, but and I kept going as if I hadn't hit it at all. By moving from the right to the left lane, the car was going up a slight bank. There was no skidding, no rumbling from the anti-lock, just a steady forward motion. I was so caught off guard with this unusual movement of the car that I thought my brakes had locked, so I didn't bother try turning the wheel. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

---

[18] *See, e.g.,* NHTSA, https://www.nhtsa.gov/recalls (last visited Dec. 17, 2024).

CLASS ACTION COMPLAINT

April 3, 2023 **NHTSA ID NUMBER: 11515156**



## Components: SERVICE BRAKES, FORWARD COLLISION AVOIDANCE

**NHTSA ID Number:** 11515156

**Incident Date** March 12, 2023

**Consumer Location** HAVERTOWN, PA

**Vehicle Identification Number** 5XYP5DHC9MG****

**Summary of Complaint**

| | |
|---|---|
| CRASH | Yes |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

While driving in a parking garage and going down a ramp to the next level, all of the lights on my dashboard popped on and the brakes stopped working. The emergency brakes failed to work, and we crashed into a wall/air conditioning unit. Luckily, we were going slow since we were in a parking garage and did not hit another car, but if we were on a highway and/ my entire family were in the car, someone could have died not only in my car but in other cars. The vehicle has been inspected by the dealership, but only after 3 weeks, and I've had to call to get any sort of communication from Kia. They have been horrible with communication. They also have not offered guaranteed reimbursement for a rental car nor have they offered a loaner. Insurance has inspected the car from a collision perspective and gave a quote on the damages. There were warning lights on as we were going down the ramp when the brakes went out.

CLASS ACTION COMPLAINT

**September 30, 2022** NHTSA ID NUMBER: 11487334

## Components: SERVICE BRAKES



**NHTSA ID Number:** 11487334

**Incident Date** September 15, 2022

**Consumer Location** COATESVILLE, PA

**Vehicle Identification Number** 5XYP54HCXMG****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | While applying the brake at an approaching Stop sign the brake pedal was completely depress and the vehicle continued to roll forward into the intersection. This happened twice in a week. Kia dealer assessed the vehicle on two occasions and was unable to find a fault. This could very well cause a major crash and impact the Safety of myself, my family and others on the roadway. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**September 17, 2021** NHTSA ID NUMBER: 11433328

## Components: SERVICE BRAKES

**NHTSA ID Number:** 11433328

**Incident Date** September 11, 2021

**Consumer Location** AVON LAKE, OH

**Vehicle Identification Number** 5xyp5dhc7mg****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | Yes | The brakes on my 2021 Kia Telluride failed while pulling into my side entry garage. The Telluride's brakes went limp, losing pressure and dropped to the floorboard. The Telluride crashed into the interior of the garage, coming to a complete stop after slamming into the foundation of the house. Once stopped, the Telluride could be put in park and braking was restored. Home surveillance captured the event and it is available for viewing at: https://youtu.be/AdJ6tXyK57k |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**June 19, 2023** NHTSA ID NUMBER: 11527744



## Components: STEERING, ELECTRICAL SYSTEM, SERVICE BRAKES

**NHTSA ID Number:** 11527744

**Incident Date** June 19, 2023

**Consumer Location** EATON, CO

**Vehicle Identification Number** 5XYP5DHC4NG****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

Backed out of my driveway went about 100 yards down the street to make a left turn. I pushed on the brake and every possible warning went off. ABS light, traction control, collision warning, error messages kept coming on. The brake pedal went to the floor. I continued to pump the brakes. Tried to put the transmission into manual mode and downshift. That didn't slow us down. Still continued to pump the brakes. Had to make a right turn or jump the curb into a park. The steering was hard to turn. Pulled the adaptive electric parking brake. Nothing. We were going slightly down hill so had a little speed, but the car came to a rest and the brakes worked. All the other warning lights and error messages kept going off. Turned off the car and started it again. Drove home and it has set there for 3 days. The dealership is always closed on the weekends. I have lost complete trust in this vehicle and in the manufacture.

CLASS ACTION COMPLAINT

**February 17, 2023** NHTSA ID NUMBER: **11507884**                                  ⊖

## Components: SERVICE BRAKES

**NHTSA ID Number:** 11507884

**Incident Date** January 31, 2023

**Consumer Location** VISALIA, CA

**Vehicle Identification Number** 5XYP2DHC0NG****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | Yes | |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

The contact owns a 2022 Kia Telluride. The contact stated while driving 3-5MPH and making a left turn, the brake pedal was depressed but bounced back immediately and failed to respond. The traction control, the Auto Hold feature, and the forward collision avoidance warning lights were illuminated. The message "Forward Collision Sensor" was displayed. The contact depressed the brake pedal for a second time but the failure persisted, causing the vehicle to hit the rear of another vehicle. The contact stated it was a fender-bender. The air bags did not deploy. The contact did not sustain any injuries. The contact was unsure whether the occupants of the other vehicle sustained injuries. There was no police report filed. The contact was able to drive to his nearby residence. The vehicle was towed to the dealer, where it was diagnosed that no issues were found. The manufacturer was notified of the failure and informed the contact that they would send an investigation team to investigate the failure. However, the investigation team investigated the failure remotely. The dealer later informed the contact that the rear wheel speed sensor needed to be replaced. The vehicle was not repaired. The failure mileage was approximately 30,000.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**February 18, 2024** NHTSA ID NUMBER: 11572624



## Components: ELECTRICAL SYSTEM, VEHICLE SPEED CONTROL, SERVICE BRAKES

**NHTSA ID Number:** 11572624

**Incident Date** February 16, 2024

**Consumer Location** NEWTON FALLS, OH

**Vehicle Identification Number** 5XYP6DGC4PG****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| **INJURIES** | **0** |
| DEATHS | 0 |

Snow Mode caused the vehicles accelerator and brakes to be unresponsive after stopping to turn. Kia could not duplicate the issue through service inspection and test drive. Since no alerts or sensors were tripped they ignore the safety concern. This major safety issue is is very very common problem among Telluride owners. A simple google search will reveal hundreds of complaints. Note: A child was in the vehicle and this occurrence happened along an interstate with poor visibility and snowy road conditions.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**December 9, 2024** NHTSA ID NUMBER: 11629649

⊖

**Components: SERVICE BRAKES**

**NHTSA ID Number:** 11629649

**Incident Date** December 5, 2024

**Consumer Location** OLATHE, KS

**Vehicle Identification Number** 5XYP5DGC7RG****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

The Brakes on this car had a failure. As the car was approaching a stop, the pedal went to the floor without any notable slowing of the vehicle. Fortunately, there was not a car immediately in front my Telluride or approaching from the side, so there was no impact. The car was then towed to the Robert Brogden Olathe, Kia and inspected. They reported that the ABS light was on and that their was air in the brake line. Using a manual bleeding procedure, the air was removed, but they have not found how their air got into the line during the last mile. Obviously, Root Cause for the air getting into the sealed system must be identified for this car to be considered safe to drive. We took delivery of this vehicle on [XXX] with fewer than 50 miles on the odometer and it was inspected and tested for 100% of all systems fully operational. During the first 700+ miles, the brakes worked perfectly. Kia Service ticket it [XXX]. Kia Customer Service Case Number [XXX]. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

- 23 -
CLASS ACTION COMPLAINT

**February 14, 2024** NHTSA ID NUMBER: 11571912

## Components: SERVICE BRAKES

⊖

**NHTSA ID Number:** 11571912

**Incident Date** January 11, 2024

**Consumer Location** CORPUS CHRISTI, TX

**Vehicle Identification Number** 5XYP3DGC3RG****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | VEHICLE has 650 miles now. It was leased from Kia. I noticed the brakes fading when at a long stop light or stop sign. Vehicle would start to roll/creep forward and brake pedal would drop slightly. The longer the stop light the more this would happen. When this happened as I was parking I left the vehicle and called the Kia help number and had the vehicle transported to Kia dealership. This was 10JAN2024. The dealership notified me that the could find no problem. I picked the vehicle up and drove home. The same problem occurred and I had the vehicle transported to the dealership. They replaced the brake master cylinder and ABS module. They notified me it was repaired. When I check the brakes the pedal still slowly went down. I refused to take the vehicle and left it at the dealership. The vehicle had been at the dealership for over 30 days before they notified me it was repaired. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

CLASS ACTION COMPLAINT

*Kia Had Exclusive Knowledge that the Brakes or Braking Systems in the Vehicles are Defective*

44.    At the same time Kia was selling the Class Vehicles to the car-buying public, Kia was aware of the problems with Class Vehicles' brakes, both from the internal validation and testing that Kia performed and from its past experience and expertise.

45.    Kia requires that each Vehicle component is tested for durability and functionality before mass production. Kia employs several teams of engineers whose work is focused on testing the functionality of the brakes in the Vehicles (including the master cylinder and hydraulic functionality), including testing on the completed vehicle, bench testing, road or simulation testing, validation test technicians, and reliability test engineers responsible for guaranteeing full vehicle and component performance for durability and functionality requirements.

46.    As part of Kia's pre-sale testing, it performs road and stress tests on the brakes in its vehicles over certain and set durations. Kia's testing replicates actual consumer use of the Vehicles and the brakes in the Class Vehicles and would have revealed to Kia that the Vehicles contain the Defect that, when the brakes fail, cause the windows in the Vehicles to function intermittently or become inoperable, posing a serious safety hazard.

47.    Federal regulations require automobile manufacturers to build vehicles that comply with the Federal Motor Vehicle Safety Standards (49 C.F.R. § 571). The existence of these standards necessarily requires Kia to extensively test its vehicles prior to selling them. During the course of these and other quality validation testing conducted by its engineers prior to their sale, Kia became aware of the Defect.

48.    Kia was also aware of the Defect based upon the raft of negative consumer responses and reactions about the Class Vehicles, which in addition to its pre-sale testing, supports an inference of knowledge—yet it continued to sell and lease the Vehicles with the Defect.

CLASS ACTION COMPLAINT

49.     Kia closely reviews Kia and Kia-related automobile message boards, consumer websites, complaints on the NHTSA website, and other websites and sources relating to its vehicles and defects, complaints, or other issues pertaining to the Kia's vehicles, including the Class Vehicles. It specifically pays considerable attention to brake or braking issues in its automobiles, as properly functioning brakes and braking systems are critical safety components.

50.     Kia specifically monitors customers' complaints made to NHTSA. Federal law requires automakers like Kia to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

51.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of its ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Kia knew or should have known of the complaints about the Defect logged by NHTSA Office of Defect Investigation (ODI), and the content, consistency, and number of those complaints alerted, or should have alerted, Kia to the Defect.

52.     Kia had knowledge, or should have known, about the Defect from all of these sources, yet it has done nothing to remedy the Defect; continued to sell Class Vehicles with a known safety issue; declined to issue a recall while, on information and belief, engaging in secret warranty-like practices and buying back Vehicles from consumers, or otherwise taking consumers out of their Vehicle loans or leases; and has sat on its hands as Kia dealerships charge class members large sums of money when class members present their Vehicles for repair of the Defect after it inevitably manifests to diagnose it.

CLASS ACTION COMPLAINT

53.    Kia had knowledge that its omissions regarding the safety and performance of the Vehicle were misleading, yet it continued to make the same omissions regarding the Vehicles to Plaintiffs and members of the proposed classes, despite the fact that Kia knew that the Vehicles were defective.

54.    To date, Kia has failed to remedy the Defect and continued to sell the Class Vehicles despite its knowledge of the Defect.

55.    To date, Kia has not demonstrated that it is capable of providing an adequate repair for the Defect, and Plaintiffs and class members do not know whether Kia is capable of providing a repair for the Defect. As such, and without the benefit of discovery, it is for all practical purposes impossible to know at this time whether a remedy at law or in equity will provide the appropriate full relief for Plaintiffs and class members. As a result, Plaintiffs, at this stage of the litigation, seek both restitution and a remedy at law, where the claims so permit. Further, Plaintiffs seek an injunction enjoining Kia and its agents, servants, and employees, and all persons acting under, in concert with, or for it from selling or leasing Class Vehicles without notice that they are subject to the Defect, which cannot be repaired, and that this remains the situation.

**THE LIMITED REMEDIES' FAILURE OF THEIR ESSENTIAL PURPOSE**

56.    Given the inherently defective nature of the Vehicles and their propensity to malfunction (or continue to malfunction) and require repair, and given Kia's inability to repair the Defect and its non-disclosure and affirmative concealment of these facts, enforcement of the unilaterally imposed durational and damage limits of the express warranty would so oppress and surprise Plaintiffs and class members as to render these durational and damage limits unconscionable, and hence unenforceable.

57.    Under the applicable warranty, Plaintiffs and class members are entitled to the repair and replacement of defective parts. However, because the Defect persists after any repairs and replacements authorized by Defendant are made, and

because Defendant knew that these actions were insufficient to cure the Defect, Plaintiffs and class members are left without any remedy under a warranty to correct the Defect. Indeed, Defendant has had numerous opportunities to correct the Defect but has failed to do so.

58.    When class members present their Vehicles for a Defect-related repair, Kia is unable to remedy the Defect. Continued presentment of Vehicles by Plaintiffs and class members to Kia in hopes of a repair or remedy would thus be futile. Simply put, Defendant's express warranty fails its essential purpose, so that class members are without the benefit of their primary bargain—reliable and operational Vehicles that are safe and free of material defects.

59.    The warranty service provided at Kia's dealerships and Kia's other agents' facilities failed to fix the problems with the Vehicles. As a result of Defendant's failure to properly or adequately repair the Defect, Plaintiffs suffered direct and reasonably foreseeable incidental damages and did not have the benefit of a safe and reliable Vehicle.

## TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

60.    Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the class were deceived regarding the Class Vehicles and could not reasonably discover the Defect or Defendant's deception with respect to the Defect.

61.    Plaintiffs and class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that the Defendant was concealing a defect and/or the Class Vehicles contained the Defect and the corresponding safety risk. As alleged herein, the existence of the Defect was material to Plaintiffs and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Class could

not have discovered—through the exercise of reasonable diligence—the existence of the Defect or that the Defendant was concealing the Defect.

62.    At all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and class members the true standard, quality, and grade of the Class Vehicles and to disclose the Defect and corresponding safety risk due to their exclusive and superior knowledge of the existence and extent of the Defect in Class Vehicles.

63.    Defendant knowingly, actively, and affirmatively concealed the facts alleged herein, and the Defect itself. Plaintiffs and class members reasonably relied on Defendant's knowing, active, and affirmative concealment.

64.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statutes of limitations.

## CLASS ACTION ALLEGATIONS

65.    Plaintiffs, individually and as a class action on behalf of similarly situated purchasers and lessees of the Vehicles pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3), seek to represent the following class:

> **Nationwide Class**
> All owners and lessees of Kia's model year 2020-2024 Telluride automobiles purchased or leased in the United States and its territories.

66.    In the alternative, Plaintiffs seek to represent the following state classes:

> **Kansas Class**
> All owners and lessees of Kia's model year 2020-2024 Telluride automobiles purchased or leased in the state of Kansas.

> **Texas Class**
> All owners and lessees of Kia's model year 2020-2024 Telluride automobiles purchased or leased in the state of Texas.

CLASS ACTION COMPLAINT

67.    Excluded from these classes are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned. Plaintiffs reserve the right to amend the definition of the classes if discovery and/or further investigation reveal that the classes should be expanded or otherwise modified.

68.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

69.    **Numerosity:** The members of the Class are so numerous that joinder of all class members in a single proceeding would be impracticable. While the exact number and identities of individual members of the class is unknown at this time, such information being in the sole possession of Kia and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege that tens of thousands of Vehicles have been sold and leased in the United States.

70.    **Existence/Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. Such common questions of law or fact include, *inter alia*:

a.    whether Kia engaged in the conduct alleged herein;

b.    whether Kia omitted and misrepresented material facts to purchasers and lessees of Class Vehicles;

c.    whether Kia's omissions and misrepresentations regarding the Class Vehicles were likely to mislead a reasonable consumer;

d.    whether Kia breached warranties with Plaintiffs and the other class members—including the implied warranty of merchantability—when it produced, distributed, and sold the Class Vehicles;

- 30 -

CLASS ACTION COMPLAINT

e.    whether Plaintiffs' and other class members' Vehicles were worth less than as represented as a result of the Defect and conduct alleged herein;

f.    whether Plaintiffs and the other class members have been damaged and, if so, the extent of such damages; and

g.    whether Plaintiffs and the other class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

71.    Kia engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, are substantially overcome, in both quality and quantity, by the numerous common questions that dominate this action.

72.    **Typicality:** Plaintiffs' claims are typical of the claims of the other class members because, among other things, Plaintiffs and the other class members were injured through the substantially uniform misconduct described above. As with Plaintiffs, class members also purchased or leased a Class Vehicle containing the Defect. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other class members, and no defense is available to Kia that is unique to Plaintiffs. The same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all class members. Plaintiffs and all class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Kia's wrongful conduct in selling/leasing and failing to remedy the Class Vehicles.

73.    **Adequacy:** Plaintiffs are adequate class representatives because they will fairly represent the interests of the class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including consumer

fraud and automobile defect class action cases. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the class they seek to represent and have the resources to do so. Plaintiffs nor their counsel have any interest adverse or antagonistic to those of the class.

74. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Kia, so it would be impracticable for class members to individually seek redress for Kia's wrongful conduct. Even if class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents no significant management difficulties, if any, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

75. Defendant has acted and refused to act on grounds generally applicable to the Classes, making appropriate final injunctive relief with respect to the Classes as a whole.

76. Upon information and belief, class members can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Kia maintains regarding its sales and leases of Class Vehicles.

77. Unless the classes are certified, Defendant will improperly retain monies that they received from Plaintiffs and members of the classes as a result of its conduct. Unless Defendant is required to change its conduct, it will continue to

commit the violations and acts alleged herein and the members of the class and the general public will continue to be misled and harmed.

## CAUSES OF ACTION

### COUNT I
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class or,**
**in the alternative, the Kansas and Texas Classes)**

78.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

79.    Plaintiffs Raymond and O'Brien bring this claim on behalf of the Nationwide Class or, in the alternative, under the laws of the states where they purchased or leased their Vehicles.

80.    Defendant is and was at all relevant times a merchant with respect to the Vehicles, and manufactured, distributed, warranted, and sold the Vehicles.

81.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold is implied by law.

82.    Plaintiffs and the other class members purchased the Vehicles manufactured and sold by Defendant in consumer transactions.

83.    The Vehicles, when sold and at all times thereafter, were not in merchantable condition, and the brakes and/or brake systems were not in merchantable condition and were not fit for the ordinary purpose for which cars are used. The Vehicles left Defendant's possession and control with the Defect that rendered them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to safety.

84.    Kia knew before the time of sale to Plaintiffs and the other class members, or earlier, that the Vehicles were produced with defective brakes or brake systems that are unfit for ordinary use, that rendered the Vehicles unfit for their ordinary purposes, and that posed a serious safety threat to drivers, passengers, and

everyone else sharing the road with the Vehicles. This knowledge was based on Defendant's own industry standard internal validation of its vehicles prior to launching new models, internal testing, knowledge about and familiarity with the power window systems included in the Vehicles, history of similar problems with similar automatic windows malfunctioning or failing in prior models, and complaints by consumers and third parties.

85.    The existence and ubiquity of the Defect is illustrated by the numerous publicized consumer complaints, disputes, and failed remedial measures nationwide.

86.    Despite Plaintiffs' and the other class members' normal, ordinary, and intended uses, maintenance, and upkeep, the brakes or brake systems in the Vehicles experienced and continue to experience the Defect and premature failure.

87.    The brakes and brake systems in the Vehicles and the Vehicles themselves are, and at all times and were, not of fair or average quality, and would not pass without objection.

88.    All conditions precedent have occurred or been performed.

89.    Plaintiffs and class members have used their Vehicles in a manner consistent with the Vehicles' intended use, and have performed each and every duty required under Kia's warranty, including presentment, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

90.    Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

91.    In addition, upon information and belief, Defendant received numerous complaints, notices of the need for repair and resulting safety issues, and requests for warranty repairs and coverage relating to the Defect from other members of the class. Upon information and belief, Kia also engages in buy backs and secretly

rectifies the Defect when it manifests in the Vehicles and consumers complain about it.

92. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to disclaim or otherwise limit express warranties in a manner that would exclude or limit coverage for the Defect that was present at the time of sale and/or lease, which Defendant knew about prior to offering the Vehicles for sale and/or lease, and which Defendant did not disclose and did not remedy prior to (or after) sale and/or lease, is unconscionable, and Defendant should be estopped from pursuing such defenses.

93. Further, any such effort by Defendant to disclaim or otherwise limit liability for the Defect is null and void because Kia and its authorized agents (the dealers) have wrongfully, uniformly, and repeatedly refused and failed recall or issue a permanent fix for the Defect.

94. Specifically, Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendant knew when it first made these warranties and their limitations that the defect existed, and the warranties might expire before a reasonable consumer would notice or observe the defect. Defendant also failed to take necessary actions to adequately disclose or cure the Defect after the existence of the Defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the Defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the Defect or cure its breaches of warranty.

95. As such, Defendant should be estopped from disclaiming liability for its actions.

96. Privity of contract is not required for consumer implied warranty claims under the relevant laws. However, Plaintiffs and the other class members had

- 35 -

sufficient direct dealings with Defendant and its agents (dealers) to establish privity of contract.

97.    Kia's authorized dealers are agents of Kia, and there is a factually plausible agency relationship between Kia and its dealerships. This agency is factually supported by at least the following: 1) Kia's warranty directs Class Vehicle owners to present their vehicles to Kia authorized dealerships for repairs; and 2) Kia requires dealerships to submit detailed data to it regarding repairs performed at dealerships. These considerations demonstrate the agency relationship between Kia and its dealerships, with whom Plaintiffs interacted and transacted as alleged herein.

98.    Privity is also not required in this case because Plaintiffs and the other class members are intended third-party beneficiaries of contracts between Defendant and its dealers (i.e., its agents); specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiffs and the other class members. Privity is also not required because Plaintiffs' and the other class members' Vehicles are inherently dangerous due to the aforementioned defect and nonconformities.

99.    Kia also had direct dealings with Plaintiffs and class members by providing warranties directly to Plaintiffs and class members. Kia provided the NVLW directly to Plaintiffs and class members, creating privity between the parties.

100.    Plaintiffs and the other class members suffered and will suffer diminution in the value of their Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

CLASS ACTION COMPLAINT

1

2

3

**COUNT II**
**Fraud/Fraudulent Omission**
**(On Behalf of the Nationwide Class or, in**
**the alternative, the Kansas and Texas Classes)**

4

5

101.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

6

7

8

102.    Plaintiffs Raymond and O'Brien bring this claim on behalf of the Nationwide Class or, in the alternative, under the laws of the states where they purchased or leased their Vehicles.

9

10

11

12

13

14

15

103. Defendant actively, intentionally, and knowingly concealed, suppressed, and/or omitted material facts including the existence of the Defect and the standard, quality, or grade of the Vehicles and the fact that the Vehicles contain a Defect and corresponding safety risk, with the intent that Plaintiffs and class members rely on Defendant's omissions. As a direct result of the Defendant's fraudulent conduct, as alleged herein, Plaintiffs and members of the class have suffered actual damages.

16

17

18

19

104.    Defendant knew at the time of sale or lease and thereafter that the Vehicles contained the Defect, omitted material information about the safety of the Vehicles, and actively concealed the Defect. To date, Defendant has not provided Plaintiffs and members of the class with an adequate repair or remedy for the Defect.

20

21

22

105.    Defendant possessed superior and exclusive knowledge regarding the Defect, and therefore had a duty to disclose any information relating to the safety and functionality of key safety features in the Vehicles.

23

24

25

26

27

106.    The Defect is material to Plaintiffs and the members of the class because Plaintiffs and the members of the class had a reasonable expectation that the Vehicles would not contain a Defect that causes their brakes to fail and that exposes them and others to a safety risk. No reasonable consumer expects a vehicle to contain a concealed defect, such as the Defect as well as its associated safety risk.

28

CLASS ACTION COMPLAINT

107.   Plaintiffs and members of the class would not have purchased or leased the Vehicles but for Defendant's omissions and concealment of material facts regarding the nature and quality of the Vehicles and the existence of the Defect and corresponding safety risk, or would have paid less for the Vehicles.

108.   Kia knew its concealment and suppression of the Defect was false and misleading, and knew the effect of concealing those material facts. Kia knew its misstatements, concealment, and suppression of the Defect would sell more Vehicles and would discourage Plaintiffs and the members of the Class from seeking replacement or repair of the Defect during the applicable warranty periods. Further, Defendant intended to induce Plaintiffs and class members into purchasing or leasing the Vehicles and to discourage them from seeking replacement or repair of the Defect in order to decrease costs and increase profits.

109.   Defendant acted with malice, oppression, and fraud.

110.   Plaintiffs and the members of the class reasonably relied upon Defendant's knowing misrepresentations, concealment and omissions. As a direct and proximate result of Defendant's misrepresentations, omissions and active concealment of material facts regarding the Defect and the associated safety risk, Plaintiffs and the members of the Class have suffered actual damages in an amount to be determined at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class, or in the**
**alternative, the Kansas and Texas Classes)**

111.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

112.   Plaintiffs Raymond and O'Brien bring this claim on behalf of the Nationwide Class or, in the alternative, under the laws of the states where they purchased or leased their Vehicles.

CLASS ACTION COMPLAINT

113.   This claim is pleaded in the alternative to the other claims herein, and seeks restitution of ill-gotten gains.

114.   As a direct and proximate result of Kia's omissions concerning and its failure to disclose the known Defect, Kia has profited through the sale and lease of the Vehicles and subsequently by profiting on the purchase of replacement parts and charging Plaintiffs and other Class Members for expensive repairs to their Vehicles when the brakes inevitably fail. Although these Vehicles are purchased through Kia's agents, the money from the Vehicle sales flows directly back to Kia.

115.   As a result of its wrongful acts, concealments, and omissions of the Defect in its Vehicles, as set forth above, Kia charged higher price for the Vehicles than the Vehicles' true value. Plaintiffs and members of the class paid that higher price for their Vehicles to Kia's authorized distributors and dealers, which are in Kia's control.

116.   Additionally, as a direct and proximate result of Kia's failure to disclose known Defect in the Vehicles, Plaintiffs and class members have Vehicles that will require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Kia.

117.   Kia has been unjustly enriched due to the known Defect in the Vehicles through the receipt and use of money paid for the defective vehicles, sale of replacement parts, and performance of repairs, that added to Kia's profits when said money should have remained with Plaintiffs and the class members.

118.   As a result of Kia's unjust enrichment, Plaintiffs and the class members have suffered damages.

119.   Equity and good conscience militate against allowing Kia to retain its ill-gotten gains, and requires disgorgement and restitution of the same.

CLASS ACTION COMPLAINT

**COUNT IV**
**VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT**
**Kan. Stat. § 50-623, *et seq.***
**(On Behalf of Plaintiff O'Brien and the Kansas Class)**

120.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

121.   This claim is brought on behalf of Plaintiff O'Brien and the Kansas Class members.

122.   Kia's conduct constituted, among other things, the following prohibited, deceptive and unfair business practices: (a) knowingly representing that property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have; (b) knowingly representing that property or services are of particular standard, quality, grade, style or model, if they of another which differs materially from the representation; (c) knowingly representing that property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; (d) knowingly representing that use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist; (e) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; and (f) the willful failure to state a material fact, or the willful concealment, suppression, or omission of a material fact. Kan. Stat. § 50-626.

123.   Kia's conduct constituted, among other things, the following unconscionable methods, acts or practices in the conduct of trade or commerce: (a) Kia knowingly or with reason to know, took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an

agreement or similar factor; (b) Kia knew or had reason to know the consumer was unable to receive a material benefit from the subject of the transaction; and (c) Kia knew or had reason to know the transaction the supplier induced the consumer to enter into was excessively one sided in favor of the supplier; and (d) Kia knew or had reason to know it made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment. Kan. Stat. § 50-627.

124. Kia's conduct was fraudulent and deceptive because the omissions created a likelihood of confusion and misunderstanding and had the capacity or tendency to deceive and, in fact, did deceive, ordinary consumers, including Kansas Plaintiff. Ordinary consumers, including Kansas Plaintiff, would have found it material to their purchasing decisions that the Class Vehicle suffered from the brake defect.

125. Kia owed Kansas Plaintiff and Kansas Subclass members, among others, a duty to disclose these facts because they were known and/or accessible exclusively to it.

126. Kansas Plaintiff and members of the Kansas Subclass justifiably relied on the material misrepresentations and/or omissions by Kia, and reasonable consumers would have been expected to rely upon these omissions, in part, because they are omissions that impact seriously on a consumer's health and well-being.

127. Kia's conduct actually and proximately caused an ascertainable loss of money or property to Kansas Plaintiff (as set forth above) and members of the Kansas Subclass. Absent Kia's unfair, deceptive, unconscionable and/or fraudulent conduct, Kansas Plaintiff and Kansas Subclass members would have behaved differently and would not have purchased, leased, or reimbursed payment for the Class Vehicles. Kia's omissions induced Kansas Plaintiff and Kansas Subclass members to purchase, lease, or reimburse payment for the Class Vehicles.

128. Accordingly, pursuant to Kan. Stat. § 50-623, Kansas Plaintiff and Kansas Subclass members are entitled to recover their actual damages, which can be

calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed classes, pray for judgment as follows:

a)    Certification of the classes under Federal Rule of Civil Procedure 23;

b)    Appointment of Plaintiffs as representatives of classes and their counsel as class counsel;

c)    Compensatory and other damages for economic and non-economic damages;

d)    An award of restitution and/or disgorgement;

e)    An injunction requiring Defendant to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign;

f)    Statutory pre-judgment and post-judgment interest on any amounts;

g)    Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

h)    Such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: December 18, 2024          Respectfully submitted,

*/s/ Robert R. Ahdoot*
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

- 42 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jonathan Shub (State Bar No. 237708)
Benjamin F. Johns
Samantha E. Holbrook
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
T: (610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Counsel for Plaintiffs and the Proposed Class*

- 43 -

CLASS ACTION COMPLAINT